## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MONICA MENDEZ,

              Plaintiff,

v.

MICHIGAN BELL TELEPHONE
COMPANY, and AT&T SERVICES, INC,

              Defendants.

CASE NO. 22-CV-11010

HON. STEPHEN J. MURPHY, III

MAG. ANTHONY P. PATTI

---

Daimeon M. Cotton  (P75563)
COTTON LAW CENTER PLLC
13900 Woodward Avenue
Highland Park, Michigan 48203
(313) 963-1320
dcotton@cottonlawcenter.com

*Attorneys for Plaintiff*

Jaclyn R. Giffen  (P75316)
Jessica G. Kingston  (P74417)
LITTLER MENDELSON, P.C.
200 Renaissance Center, Suite 3110
Detroit, Michigan 48243
(313) 446-6400
jgiffen@littler.com
jgkingston@littler.com

*Attorneys for Defendants*

---

## **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants Michigan Bell Telephone Company and AT&T Services, Inc. ("Defendants"), by their attorneys, Littler Mendelson, P.C., move the Court pursuant to Fed. R. Civ. P. 56(a), for an order granting Defendants' Motion for Summary Judgment on the ground that there is no genuine issue of material fact as to the claims

Plaintiff asserts against Defendants, and Defendants are entitled to judgment as a matter of law.

In support of their motion, Defendants rely upon the facts and law as set forth in the attached brief in support, the exhibits attached to the brief, and to the extent necessary, any pleadings or other documents on file with the Court.

In accordance with E.D. Mich. L.R. 7.1, the undersigned has communicated with Plaintiff's counsel and ascertained that Plaintiff opposes this motion.

WHEREFORE, Defendants Michigan Bell Telephone Company and AT&T Services, Inc. respectfully request that the Court enter an Order granting Defendants' Motion for Summary Judgment and dismissing Plaintiff's claims with prejudice and with costs to Defendants.

Dated:  June 2, 2023

*/s/ Jessica Kingston*

Jessica Kingston  (P74417)
LITTLER MENDELSON, P.C.
200 Renaissance Center, Suite 3110
Detroit, Michigan 48243
(313) 202-3170
jgkingston@littler.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a copy of the foregoing document was served upon all parties and/or attorneys of record to the above cause herein at their respective addresses as disclosed on the pleadings on June 2, 2023 via:

| _____ | U. S. Mail | _____ | Facsimile |
| X | ECF Filing | _____ | Hand Delivery |
| _____ | E-Mail | _____ | Federal Express |

*/s/ Jessica Kingston*
Jessica Kingston

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MONICA MENDEZ,                                    CASE NO. 22-CV-11010

        Plaintiff,                         HON. STEPHEN J. MURPHY, III

v.                                               MAG. ANTHONY P. PATTI

MICHIGAN BELL TELEPHONE
COMPANY, and AT&T SERVICES, INC,

        Defendants.

---

| | |
|---|---|
| Daimeon M. Cotton  (P75563) | Jaclyn R. Giffen  (P75316) |
| COTTON LAW CENTER PLLC | Jessica G. Kingston  (P74417) |
| 13900 Woodward Avenue | LITTLER MENDELSON, P.C. |
| Highland Park, Michigan 48203 | 200 Renaissance Center, Suite 3110 |
| (313) 963-1320 | Detroit, Michigan 48243 |
| dcotton@cottonlawcenter.com | (313) 446-6400 |
| | jgiffen@littler.com |
| *Attorneys for Plaintiff* | jgkingston@littler.com |
| | |
| | *Attorneys for Defendants* |

---

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR
## MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

PAGE

I.      INTRODUCTION ............................................................1

II.     BACKGROUND ..............................................................2

        A.      Plaintiff's Early Employment with Michigan Bell. ............................2

        B.      Plaintiff's Transition to the Sales and Service Representative
                Position. ......................................................................2

        C.      Plaintiff's Continued Poor Performance and Subsequent
                Termination. ...................................................................7

III.    STANDARD OF REVIEW .................................................10

IV.     ANALYSIS......................................................................11

        A.      Plaintiff never worked for AT&T Services, so her claims
                against that Defendant must be dismissed.  ........................................12

        B.      Plaintiff's discrimination claims must be dismissed because
                Plaintiff cannot satisfy her prima facie or pretext burdens. ...............12

                1.      Plaintiff has no evidence from which to prove she was
                        replaced by an individual outside her protected class or
                        treated less favorably than an individual outside her
                        protected class. ........................................................13

                2.      Plaintiff has no evidence that management had any
                        knowledge of her purported disability or her age. ...................18

                3.      Plaintiff was terminated because of her poor work
                        performance and Plaintiff does not have evidence of
                        pretext....................................................................19

        C.      Plaintiff Fails to Establish the Elements for Her Retaliation
                Claims. ...................................................................20

                1.      Plaintiff did not engage in conduct protected by Title VII,
                        the ADA, the PWDCRA, or ELCRA.  ....................................21

## TABLE OF CONTENTS

PAGE

2.    Plaintiff has no evidence that Angela Jackson knew about her complaint..................................................................22

3.    There was no casual connection between Plaintiff's supposed Complaint and Plaintiff's discipline and termination. .................................................................................23

4.    There is no evidence that Plaintiff's discipline or termination was pretextual. .....................................................23

V.    CONCLUSION..............................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alexander v. CareSource*,
　576 F.3d 551 (6th Cir. 2009) ...............................................................11

*Anderson v. Liberty Lobby, Inc.*,
　477 U.S. 242 (1986).............................................................................11

*Barrett v. Whirlpool Corp.*,
　556 F.3d 502 (6th Cir. 2009) ...............................................................20

*Bates v. Am. Axle & Mfg.*,
　2019 U.S. App. LEXIS 27955 (6th Cir. Sept. 17, 2019) ....................16

*Booker v. Brown & Williamson Tobacco Co.*,
　879 F.2d 1304 (6th Cir. 1989) .............................................................21

*Brown v. VHS of Michigan*,
　545 Fed. Appx. 368 (6th Cir. 2013).....................................................22

*Craig-Wood v. Time Warner NY Cable LLC*,
　549 Fed. Appx. 505 (6th Cir. 2014)......................................................18

*Crane v. Mary Free Bed Rehab. Hosp.*,
　634 Fed. Appx. 518 (6th Cir. 2015).....................................................23

*Curry v. SBC Communications, Inc.*,
　669 F. Supp. 2d 805 (E.D. Mich. 2009) ..............................................13

*EEOC v. Ford Motor Co.*,
　782 F.3d 753 (6th Cir. 2015) ...............................................................23

*Evans v. Prof'l Transp., Inc.*,
　614 Fed. Appx. 297 (6th Cir. 2015)......................................................22

*Ferrari v. Ford Motor Co.*,
　826 F.3d 885 (2016).............................................................................13

*Highland Capital, Inc. v. Franklin Nat'l Bank*,
　350 F.3d 558 (6th Cir. 2003) ...............................................................11

*Johnson v. Fifth Third Bank*,
  685 Fed. Appx. 379 (6th Cir. 2017)....................................................20

*Knox v. Neaton Auto Prods. Mfg.*,
  375 F.3d 451 (6th Cir. 2004) ..........................................................17

*Kocsis v. Multi-Care Mgmt.*,
  97 F.3d 876 (6th Cir. 1996) ............................................................18

*LaDuke v. Shinseki*,
  No. 12-11193 (E.D. Mich. Jan. 31, 2014) ........................................21

*Lewis v. Humboldt Acquis. Corp.*,
  681 F.3d 312 (6th Cir. 2012) ..........................................................23

*Lockett v. Marsh USA, Inc.*,
  354 Fed. Appx. 984 (6th Cir. 2009)..................................................22

*Loyd v. Oakland*,
  766 F.3d 580 (6th Cir. 2014) ..........................................................19

*MacDonald v. United Parcel Serv.*,
  430 Fed. Appx. 453 (6th Cir. 2011)..................................................13

*Marotta v. Ford Motor Co.*,
  119 F.Supp.3d 676 (E.D. Mich. 2015) .............................................21

*Penny v. United Parcel Serv.*,
  128 F.3d 408 (6th Cir. 1997) ..........................................................21

*Pierce v. Commonwealth Life Ins. Co.*,
  40 F.3d 796 (6th Cir. 1991) ............................................................14

*Policastro v. Northwest Airlines, Inc.*,
  297 F.3d 535 (6th Cir. 2002) ..........................................................13

*Powell v. Baptist Mem'l Hosp.*,
  2023 U.S. Dist. LEXIS 68128 (W.D. Tenn Feb. 22, 2023) ...............15

*Rogers v. Henry Ford Health Sys.*,
  897 F.3d 763 (6th Cir. 2018) ..........................................................21

*Vaughn v. Watkins Motor Lines, Inc.*,
  291 F.3d 900 (6th Cir. 2002) ...............................................................................14

*Wingo v. Mich. Bell Tel. Co.*,
  815 Fed. Appx. 43 (6th Cir. 2020)......................................................................16

*Wright v. Murray Guard, Inc.*,
  455 F.3d 702 (6th Cir. 2006) ...............................................................................20

*Wylie & Sons Landscaping, LLC v. FedEx Ground Package Sys.*,
  696 Fed. Appx. 717 (6th Cir. 2017).....................................................................15

**Statutes**

29 U.S.C. § 623(a) .....................................................................................................12

42 U.S.C. §2000e-2(a) ...............................................................................................12

42 U.S.C. § 12112(a) .................................................................................................12

ADA ................................................................................................................*passim*

ADEA.....................................................................................................11, 12, 13

ELCRA.............................................................................................................*passim*

MCL § 37.1202(1) .....................................................................................................12

MCL § 37.2202(1) .....................................................................................................12

PWDCRA...........................................................................................................*passim*

Title VII of the Civil Rights Act of 1965.........................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 56 ................................................................................................10, 12

## STATEMENT OF QUESTIONS PRESENTED

1.      Plaintiff's claims of discrimination and retaliation under Title VII, the ADEA, the ADA, ELCRA, and the PWDCRA only apply to her employer. AT&T Services, Inc. was not Plaintiff's employer. Is AT&T Services, Inc. entitled to summary judgment pursuant to Fed. R. Civ. P. 56 on Plaintiff's claims?

Defendants' Answer:  Yes

2.      An employer is only liable for a claim of discrimination under Title VII, the ADEA, the ADA, ELCRA, and the PWDCRA if an employee can establish that they were replaced by someone outside of their protected class or that they were treated less favorably than similarly situated individuals outside of their protected class. Defendants did not replace Plaintiff after her termination and Plaintiff has not provided any evidence that she was treated differently than similarly situated individuals.  Are Defendants entitled to summary judgment pursuant to Fed. R. Civ. P. 56 on Plaintiff's claims of discrimination?

Defendants' Answer:  Yes

3.      An employer is only liable for a claim of discrimination under Title VII, the ADEA, the ADA, ELCRA, and the PWDCRA if an employee can establish that the employer's legitimate business reason for her discipline or termination was pretextual. Plaintiff has not provided any evidence that her discipline or termination was based on her various protected classes or otherwise unrelated to her poor job

performance. Are Defendants entitled to summary judgment pursuant to Fed. R. Civ.

P. 56 on Plaintiff's claims of discrimination?

Defendants' Answer:  Yes

4.     An employer is only liable under Title VII, the ADA, the PWDCRA,

and ELCRA for retaliation if an employee can establish that they participated in a

protected activity under the applicable statute and a causal connection between the

protected activity and any adverse action. Plaintiff did not take part in protected

activity under any of the four applicable statutes and if she did, Defendants did not

know about it. Further, Plaintiff was terminated because of her poor work

performance. Are Defendants entitled to summary judgment pursuant to Fed. R. Civ.

P. 56 on Plaintiff's claims of retaliation?

Defendants' Answer:  Yes

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

*Vaughn v. Watkins Motor Lines, Inc*., 291 F.3d 900 (6th Cir. 2002)

*Knox v. Neaton Auto Prods. Mfg.,* 375 F.3d 451 (6th Cir. 2004)

*Kocsis v. Multi-Care Mgmt*., 97 F.3d 876 (6th Cir. 1996)

## I.     INTRODUCTION

After taking a role with Defendant Michigan Bell Telephone Company's sales and service department, Plaintiff did not perform a key portion of her responsibilities – sales. She was consistently unable to meet her sales goals despite training, coaching, warnings, and discipline. After almost two years of Plaintiff's continued inability to meet her sales objectives, Michigan Bell terminated Plaintiff's employment. Despite her sustained unsatisfactory performance, she now contends the Company discriminated against her based on age, gender, national origin, race, and disability status and retaliated against her. Plaintiff is unable to establish the prima facie elements of any of her claims because there is no evidence she was replaced by someone outside her protected class or that she was treated less favorably than a similarly situated individual outside her protected class. She also has no evidence that her managers had knowledge about her age or purported disability, or the ages and disability status of the alleged comparators. Plaintiff further cannot prove the reason for her termination – sustained unsatisfactory performance – was a pretext for a discriminatory or retaliatory motive. Therefore, all of her claims are ripe for summary dismissal. Additionally, Plaintiff asserts all of her claims against two corporate defendants – her employer Michigan Bell Telephone Company and another entity AT&T Services, Inc. Because Plaintiff was never employed by AT&T Services, Inc., her claims against that entity also fail.

## II.     BACKGROUND

### A.     Plaintiff's Early Employment with Michigan Bell.

Plaintiff was hired by Michigan Bell in 1992 as a Communications Assistant. See Exhibit A, Pltf's Dep. Tr. at 19:11-19. In early 2018, the department in which Plaintiff worked closed for business reasons. See *id*. at 21:5-22:5. She applied for and received a new role with the Company as a Sales and Service Representative. This was Plaintiff's first sales role in her career with Michigan Bell. See *id*. at 20:13-15 and 21:15:17.

### B.     Plaintiff's Transition to the Sales and Service Representative Position.

As a Sales and Service Representative, Plaintiff was responsible for taking calls from customers regarding their ongoing concerns, assisting customers with these concerns, learning about the customer's phone and internet needs, and upselling the customers with additional services. See Exhibit B, T. Martin Declaration at ¶ 8. The representatives worked in an open space, taking calls consistently throughout the day. See Ex. A, Pltf's Dep. Tr. at 31:18-23. The Company provided each Sales and Service Representative with a monthly "Scorecard," which provided each employee an objective overview of their output towards their sales goals. See e.g., Exhibit C, 2020-2021 Mendez Monthly Scorecard results. Sales and Service Representatives in Plaintiff's department were required to achieve a minimum 100% score each month in the Total Attainment category, which

compiles multiple categories of objectives into one category. See Ex. K at ¶ 5. The 100% requirement for the category was a floor, or a minimum requirement, for these employees – Sales and Service Representatives strived to exceed that metric. See Ex. A, Pltf's Dep. Tr. at 74:4-15.

After transferring to the sales department, Plaintiff reported to Carlos Bahena, her Sales Coach Manager. See Ex. B at ¶ 7. Mr. Bahena reported to the Center Sales Manager, Kenny Spears. See *id*. at ¶ 7. Alongside the other employees who transferred to the sales department, Plaintiff received almost four months of training for the new role, three months classroom training and one month of on the job training – this is twice the amount of training the Company provides its new hires. See *id*. at ¶ 4, Ex. 1. In addition to the new hire training, sales coaches, like Mr. Bahena, listened to employee's calls and assisted the employees with tactics and strategies to increase their sales output. See *id*. at ¶ 10. Despite this extensive training, Plaintiff struggled to achieve even the minimum performance metrics.

On April 27, 2018, Mr. Bahena provided Plaintiff with a warning letter regarding her performance. See Exhibit D. Mr. Bahena had observed Plaintiff on a call with a customer the day before and found that Plaintiff did not implement any of the coached sales strategies. See *id*. Mr. Bahena advised Plaintiff that she had previously shown that she was able to make offers to customers for new services, as she was required to do, yet she did not do so on the call he observed. See *id*.

He further explained that she was required to make an offer to a customer on all calls, follow the company's call flow procedures, and if she failed to do so she could be subject to further "corrective action up to and including dismissal." *Id.*

Following this first step of discipline, Mr. Bahena continued to work with Plaintiff on her sales skills, including observing Plaintiff and providing her feedback on her calls. See, e.g. Ex. B at ¶ 5, Exs. 2-5. Mr. Bahena also warned Plaintiff that she was not on track to meet her monthly goals. See *id.*, Ex. 4.

Despite this additional coaching, Plaintiff continued to fail to take the required steps on her calls with customers. On June 7, 2018, Mr. Bahena issued Plaintiff another step of discipline after observing her during a customer call during which she only demonstrated 18% of the customer service behaviors that she was required to do. See Exhibit E. Mr. Bahena again warned Plaintiff that if she continued to disregard the proper protocols for customer calls, she was subject to "further corrective action up to and including dismissal." See *id.* Because Plaintiff had already been warned for this behavior, this letter served as a final written warning. See *id.*

Mr. Bahena continued to coach Plaintiff regarding her sales techniques, giving her tips like avoiding silence on the line and using emphatic language. See Ex. B at ¶ 5, Exs. 6-9. On June 21, 2018, however, Mr. Bahena observed Plaintiff again on a call where she failed to follow the company's prescribed call flow and failed to make

an offer to the customer. See Exhibit F. Because of this policy violation and her prior disciplines, Plaintiff was placed on the next step of discipline – a one-day suspension. See *id*. Following her June 21, 2018 one-day suspension, Plaintiff started a leave of absence from June 22, 2018 through August 26, 2018 followed by an additional leave from August 30, 2018 through September 3, 2018. See Ex. B at ¶ 12.

After her return to work, Mr. Bahena continued coaching Plaintiff, providing her with guidance on providing offers on all available products or upgrades and reiterating the standards for monthly Scorecard tracking. See Ex. B at ¶ 5, Exs. 10-12. Mr. Bahena met with Plaintiff on September 6, 2018, to issue further discipline for Plaintiff's continued failure to meet the minimum performance metrics. See *id*., Ex. 13. During the meeting, Plaintiff stated she did not like the work environment because it was noisy; she did not want balloons to recognize her sales; and she believed Mr. Bahena listening to her calls was harassing. See *id*. Mr. Bahena reminded her they had already relocated her workspace to a less populated area of the call center to minimize any distractions by people walking by and background music. See *id*. He also explained that he listened to her calls (and calls handled by every representative on his team) to provide her and the other representatives real time coaching and feedback to help them achieve their performance metrics. See *id*. At the end of the meeting, Plaintiff received a letter confirming her discipline and a

copy of a Performance Improvement Plan. See Exhibit G. To assist Plaintiff with her goals, Mr. Bahena placed Plaintiff in a "peer side by side" where she sat with two peers during their calls. See *id*., Ex. 14.

On September 24, 2018, Plaintiff began another leave of absence through November 4, 2018 followed by an additional leave from November 8, 2018 through December 2, 2018. See Ex. B at ¶ 12. Shortly after her return to work, Plaintiff contacted Michigan Bell's internal reporting hotline and indicated that she blamed her discipline that year on "discrimination" because of her tenure with the company. See Ex. B at ¶ 4, Ex. 1 at p. 1. The Company's EEO department investigated Plaintiff's complaint and determined her discipline was the result of her ongoing performance and had nothing to do with her seniority with the Company. See *id*. at 6. The EEO department further determined Plaintiff's concerns that she was not provided enough time to learn the job responsibilities was unsubstantiated because she had received a longer than standard training period. See *id*.

A few days after making her internal complaint, Plaintiff met with Mr. Bahena and complained about background music played in the call center; Mr. Bahena promptly responded and agreed to move her space (again) further from the speaker playing music. See Ex. B at ¶ 5, Ex. 15. Later that month, Mr. Bahena again met with Plaintiff regarding the required flow for calls with customers, reiterating the process she was required to follow. See *id*., Ex. 16.

In January 2019, Mr. Bahena again observed Plaintiff on a call, and found that she was not properly inquiring about the customer's needs or offering services that would be appropriate and possible upgrades. See Ex. B at ¶ 5, Ex. 17. Although Mr. Bahena could have issued discipline, he instead gave Plaintiff a break and used the call as an opportunity to coach her. See *id*. He also worked with her on how to access her status for the monthly Scorecard statistics and reiterated her sales goals, broken down by how many she needed to accomplish each week. See *id*. at ¶ 5, Exs. 18-19.

A few weeks later, Mr. Bahena again observed a call between Plaintiff and a customer where, despite opportunities to do so, she failed to recommend broadbands or bundles. See Ex. B at ¶ 5, Ex. 20. Plaintiff's failure to provide these recommendations was considered a "no offer" and she was disciplined accordingly, provided a final written warning with a three-day unpaid suspension. See Exhibit H.

Mr. Bahena continued to coach Plaintiff on her sales tactics and targets. See Ex. B at ¶ 5, Exs. 21-23. Unfortunately, Plaintiff continued to underperform, and Mr. Bahena disciplined her with a Final Written Warning Letter and a 1-day unpaid suspension. See Exhibit I. Plaintiff began another leave of absence on April 10, 2019. See Ex. B at ¶ 12.

### C.   Plaintiff's Continued Poor Performance and Subsequent Termination.

Plaintiff spent the majority of 2019 in and out of leaves of absence. See Ex. B at ¶ 12; see also Ex. A, Pltf's Dep. Tr. at 58:21-59:9. During this time, Mr. Bahena

7

transitioned to a new role in the company and Lavincenae Reid took on his role as Sales Coach Manager for Plaintiff's team. See Ex. B at ¶ 11; see also Ex. A, Pltf's Dep. Tr. at 59:7-9.

Like Mr. Bahena before her, Ms. Reid continued to coach Plaintiff on company expectations, sales strategies, and Plaintiff's current stage of discipline after Plaintiff returned to work in December 2019. See Ex. B at ¶ 5, Exs. 24-25. Ms. Reid also reiterated the company's call flow procedures, instructing Plaintiff on the proper structure to use for her discussions with customers. See *id*., Ex 26. Importantly, Ms. Reid also walked Plaintiff through the expectations she would be required to meet for her 2020 Scorecard metrics. See *id*., Ex. 27.

Ms. Reid provided Plaintiff coaching by listening to her calls, sitting side by side with her and providing real time feedback, one-on-one meetings, and team-wide training sessions. See e.g., Ex. B at ¶ 5, Exs. 28-29, 31-33, 35-37. Despite this coaching, Plaintiff continued to fail to meet Scorecard objectives. After she failed to meet her objectives in January 2020, Ms. Reid warned Plaintiff that if she continued to do so, she would receive discipline. See *id*., Ex. 30. Ms. Reid again warned Plaintiff for her May 2020 Scorecard results but did not issue any discipline. See *id*., Ex. 34. After Plaintiff's June Scorecard results came well under the 100% target, Ms. Reid issued Plaintiff discipline, repeating her prior third step, Final Written Warning with a 1-day unpaid suspension. See Exhibit J.

In September 2020, Angie Jackson became Plaintiff's Sales Coach. See Exhibit K, A. Jackson Decl. at ¶ 4. Plaintiff's Scorecard results continued to fall below the company's requirement and in October 2020, Ms. Jackson provided Plaintiff with discipline, again repeating the third step with a Final Written Warning with 1-day unpaid suspension. See Exhibit L.

Like Mr. Bahena and Ms. Reid before her, Ms. Jackson attempted to overcome this by providing Plaintiff coaching on sales strategies, including providing a story alongside the offers to educate customers on company products and avoiding silence during calls, and company expectations for monthly Scorecards. See Ex. B at ¶ 5, Exs. 38-44, 46

In late December, Ms. Jackson also met with Plaintiff to discuss the 2021 expectations for the monthly Scorecards, which were again to achieve the minimum score of 100% every month. See Ex. K at ¶ 5, and Ex. B at ¶ 5, Ex. 45. In one particular coaching session, Ms. Jackson was again instructing Plaintiff on how to tell stories alongside her offers, and Plaintiff rebuffed the coaching, stating that she could not do so when the customer was upset. See Ex. B at ¶ 5, Exs. 47-48. Ms. Jackson provided Plaintiff some example stories and strategies for overcoming objections that she could use and played Plaintiff a call where a different representative was able to implement that strategy. See *id.* Ms. Jackson reiterated that providing these stories and making the requisite service offers were a

requirement of Plaintiff's position for *every* call. See *id*. She reminded Plaintiff that if she continued to fail to do so, she would be disciplined. See *id*.

After witnessing Plaintiff keep a customer on hold with no conversation for too long, Ms. Jackson again met with Plaintiff regarding dead airtime. See Ex. B at ¶ 5, Ex. 49. When Ms. Jackson said that Plaintiff needed to multi-task by working on correcting the customer's concerns while also building a rapport and selling services, Plaintiff responded that she could not do so. See *id*. Later in the month, Ms. Jackson worked with Plaintiff on her tactics again because she was not implementing the strategies they had previously discussed. See *id*., Ex. 51. Plaintiff claimed the strategies would not work because the customer was mad about their service. See *id*. Plaintiff was not willing to follow her coaching to improve her performance.

As of April 2021, Plaintiff's monthly Scorecard results had not met the 100% requirement for any month in 2020 or 2021. See Ex. C. In fact, Plaintiff had not earned a total attainment score over 60% since August 2020. See *id*.

Based on Plaintiff's continuing failure to meet company expectations despite continued coaching, Michigan Bell terminated her employment in April 2021. See Ex. K at ¶ 6.

## III.   STANDARD OF REVIEW

When deciding a motion for summary judgment under Fed. R. Civ. P. 56, the Court must determine "whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must prevail

as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

Importantly, to avoid summary judgment, a plaintiff "must show that she *can* make

good on the promise of the pleadings by laying out enough evidence that *will* be

admissible at trial to demonstrate that a genuine issue on a material fact exists, and

that a trial is necessary." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009)

(emphasis in original). "Thus, the mere existence of a scintilla of evidence in support

of the plaintiff's position will be insufficient; there must be evidence on which the

jury could reasonably find for the plaintiff." *Highland Capital, Inc. v. Franklin Nat'l

Bank*, 350 F.3d 558, 564 (6th Cir. 2003).

## IV.   ANALYSIS

Plaintiff states fourteen claims against Michigan Bell and AT&T Services,

Inc. alleging: (1) sex, race, and national origin discrimination in violation of

Title VII of the Civil Rights Act of 1965 ("Title VII") and Michigan's Elliott-Larsen

Civil Rights Act ("ELCRA"); (2) age discrimination in violation of the Age

Discrimination in Employment Act of 1967 (the "ADEA") and ELCRA;

(3) disability discrimination in violation of the Americans with Disabilities Act (the

"ADA") and Michigan's Persons with Disabilities Civil Rights Act (the

"PWDCRA"); and (4) retaliation in violation of Title VII, the ADA, the PWDCRA,

and ELCRA. See ECF No. 13, PageID.136-160, Pl's Second Amended Complaint.

All of Plaintiff's claims are ripe for dismissal under Fed. R. Civ. P. 56.

### A. Plaintiff never worked for AT&T Services, so her claims against that Defendant must be dismissed.

The statutes under which Plaintiff asserts her claims – Title VII, the ADEA, the ADA, ELCRA, and the PWDCRA – all prohibit an "employer" from discriminating or retaliating against an individual on the basis of the individual's protected class. See 42 U.S.C. §2000e-2(a) (Title VII); 29 U.S.C. § 623(a) (the ADEA); 42 U.S.C. § 12112(a) (the ADA); MCL § 37.2202(1) (ELCRA); MCL § 37.1202(1) (PWDCRA). Plaintiff worked for Michigan Bell Telephone Company only – she was never employed by AT&T Services, and Plaintiff has no evidence to the contrary. See Ex. B at ¶ 5, Ex. 52. Accordingly, Plaintiff's claims against AT&T Services must be dismissed.

### B. Plaintiff's discrimination claims must be dismissed because Plaintiff cannot satisfy her prima facie or pretext burdens.

Plaintiff claims Michigan Bell discriminated against her by disciplining and eventually terminating her because of her sex, race, and national origin in violation of Title VII and ELCRA; her age in violation of the ADEA and ELCRA; and a purported disability in violation of the ADA and the PWDCRA. See ECF No. 13, PageID.136-160, Counts 1, 2, 3, 4, 6, 8, 9, 10, 11, and 12.[1] Absent direct evidence

---

[1] Plaintiff does not appear to know which specific protected status she asserts prompted Michigan Bell's actions but alleges it was either because she is Mexican,

of discrimination, as is the case here, Plaintiff must establish a prima facie case of discrimination to survive summary judgment, including, among other factors, evidence that she was treated less favorably than a similarly situated individual outside the protected class or replaced by someone outside the protected class. *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891-892 (2016).[2,3] Plaintiff must also come forward with evidence that Michigan Bell's stated reason for her termination is a pretext for an unlawful discriminatory reason. *Id.*

> ### 1. Plaintiff has no evidence from which to prove she was replaced by an individual outside her protected class or treated less favorably than an individual outside her protected class.

Failure to demonstrate Michigan Bell replaced Plaintiff with someone outside her protected class or that the Company treated more favorably a similarly situated comparator outside her protected class is fatal to all of Plaintiff's discrimination claims. See *Curry v. SBC Communications, Inc.*, 669 F. Supp. 2d 805, 826-27 (E.D. Mich. 2009). Plaintiff has no evidence that she was replaced by anyone, much less someone outside her protected in class. To the contrary, the Company did not replace

---

Hispanic, female, because of her age, or because of her alleged disability. See Ex. A, Pltf's Dep. Tr. at 108:10-12, 119:7-9, 129:20-22, 131:25-132:2, 139:12-15.

[2] Claims of discrimination brought pursuant to the ADEA and Title VII are analyzed under the same framework. See *Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 538 (6th Cir. 2002).

[3] The ADA and PWDCRA apply the same McDonnell Douglas burden shifting framework as Title VII and ELCRA cases. See *MacDonald v. United Parcel Serv.*, 430 Fed. Appx. 453, 463 (6th Cir. 2011).

Plaintiff after her termination; her job duties were assumed by other representatives in the call center. See Ex. B at ¶ 14; *Vaughn v. Watkins Motor Lines, Inc*., 291 F.3d 900, 906-07 (6th Cir. 2002) (holding that plaintiffs failed to establish a prima facie case where the record contained no evidence concerning the employees who allegedly had replaced them).

Regarding similarly situated comparators, the Sixth Circuit explains:

In order for two or more employees to be considered similarly-situated for the purpose of creating an inference of disparate treatment in a [discrimination] case, the plaintiff must prove that all of the relevant aspects of [her] employment situation are "nearly identical" to those of the *** employees who [s]he alleges were treated more favorably. The similarity between the compared employees must exist in all relevant aspects of their respective employment circumstances.

*Pierce v. Commonwealth Life Ins. Co*., 40 F.3d 796, 802 (6th Cir. 1991) (emphasis added).

Plaintiff also has no evidence that other representatives in her call center had the same substandard performance history she did but were not disciplined or terminated. Her only "evidence" is her own speculation, which is insufficient to meet the Court's evidentiary requirement because disputed facts must be established by admissible evidence. It is not enough, for Plaintiff to merely identify "comparators" who she believes are similarly-situated in all relevant aspects. She must support these allegations with admissible evidence – such as sworn testimony based on personal knowledge – and that evidence must establish that the comparators had the

same job and substandard performance history as Plaintiff and the same managers as Plaintiff's who treated these other employees more favorably. See *Wylie & Sons Landscaping, LLC v. FedEx Ground Package Sys.,* 696 Fed. Appx. 717, 721 (6th Cir. 2017) (explaining opinions, speculation, and inadmissible hearsay do not meet the court's evidentiary requirement because disputed facts must be established by admissible evidence).

Plaintiff concedes she has no evidence that any of her coworkers were treated better because of her protected characteristics. See Ex. A, Pltf's Dep. Tr. at 117:10-13 and 118:11-13. When asked to provide names of younger coworkers who were treated better, Plaintiff responded, "Well I don't know exactly their ages so I can't say if they were younger…" See *id*. at 138:4-7. Similarly, when she was asked about employees without a disability who were treated better than she was, she responded, "Well, like I wouldn't know if they had a disability or not. I can't think of – I mean, the whole office. Some people had disabilities, but I don't know – I can't think of who did and didn't have a disability." See *id*. at 142:7-14; *Powell v. Baptist Mem'l Hosp.,* 2023 U.S. Dist. LEXIS 68128, *32 (W.D. Tenn Feb. 22, 2023) (explaining the plaintiff's "failure to show that the [comparators] did not belong to a protected class is fatal to her argument that those [comparators] can satisfy this aspect of her *prima facie* case").

Additionally, evidence shows that several of the individuals Plaintiff has

identified were not similarly situated to her. During her deposition, Plaintiff stated that a member of management, Kenny Spears, treated an employee with the first name Jeff (last name unknown) better than her. See Ex. A, Pltf's Dep. Tr. at 114:3-10. But, she then admitted that Jeff held a different job than her. See *id.* at 116:6-15. See *Bates v. Am. Axle & Mfg.*, 2019 U.S. App. LEXIS 27955, *5-6 (6th Cir. Sept. 17, 2019) (affirming summary judgment and holding the alleged comparators were not similarly situated because they had different job duties and worked on different projects than the plaintiff).

Further, Plaintiff admits that while she *felt* as if others were not similarly punished for their sales performance, she was not privy to other employees' monthly Scorecard results. See Ex. A, Pltf's Dep. Tr. at 115:15-16, 115:21-22, 116:4-5, 117:8-9, 118:8-10, 121:3-5, and 124:7-8. Plaintiff testified about a conversation she had with a coworker named Mike Wallace, who Plaintiff claims told her that he would sometimes not make the required offers on calls without receiving discipline. See *id.* at 191:14-17. But, Plaintiff was not aware of whether Mr. Wallace was observed during those calls, or whether management was otherwise aware that he was failing to fulfill the required call steps. See *id.* at 191:21-192:1. Plaintiff also has no evidence from which a jury could determine if Mr. Wallace had the same sustained unsatisfactory performance as Plaintiff. See *Wingo v. Mich. Bell Tel. Co.,* 815 Fed. Appx. 43, 46 (6th Cir. 2020) (explaining the plaintiff's allegations about

supposed comparators was insufficient to withstand summary judgment because he "lack[ed] personal knowledge to support those allegations. When questioned as to his basis for claiming that other employees were disciplined differently, [the plaintiff] had little to offer.").

Plaintiff also asserts without any evidence that certain employees received "good calls," which she described as customers "who are calling in to get service…" See Ex. A, Pltf's Dep. Tr. at 100:17-20. But she did not know how the calls were directed to these individuals, if at all. She assumed that these individuals got the "good calls" because "[t]here were certain people who were always at the top of the sales that would get higher numbers than everybody else." See *id*. at 102:9-13. See *Knox v. Neaton Auto Prods. Mfg.,* 375 F.3d 451, 458 (6th Cir. 2004) (affirming summary dismissal of the plaintiff's discrimination claim where the plaintiff admitted she had no evidence – such as documents or testimony – from which to prove comparators were similarly situated).

In fact, calls are routed to representatives through an automated call routing system. See Ex. B at ¶ 9. Customers call the Company using a toll-free number and identify through certain indicators the reason for their call. See *id*. The call is then automatically routed to an open representative. See *id*. If no representative is open and available, the customer call is put in que and automatically transferred to first available agent. See *id*.

Overall, Plaintiff relies on her own conjecture and assumptions as "evidence" of discriminatory treatment. Plaintiff has not come forward with evidence of any proper comparable showing that employees outside of her protected classes were treated differently under sufficiently similar circumstances. Therefore, Plaintiff is unable to establish an inference of unlawful discrimination for any of her discrimination claims and they should be dismissed. See *Craig-Wood v. Time Warner NY Cable LLC*, 549 Fed. Appx. 505, 509-10 (6th Cir. 2014) (affirming summary dismissal of the plaintiff's discrimination claim because she had no evidence that she was treated less favorably than any similarly-situated comparator outside her protected class).

### 2.  Plaintiff has no evidence that management had any knowledge of her purported disability or her age.

Plaintiff's age and disability claims further fail because she has no evidence that any of her managers who issued her discipline or responsible for the decision to terminate her employment had knowledge of her age or purported disability, or the ages and disability status of her supposed comparators. See *Kocsis v. Multi-Care Mgmt.*, 97 F.3d 876, 884 (6th Cir. 1996) (explaining the employer could not have discriminated against an employee because of her protected class if it had no knowledge of the disability).

### 3. Plaintiff was terminated because of her poor work performance and Plaintiff does not have evidence of pretext.

Assuming arguendo that Plaintiff could establish the prima facie elements of her various allegations of discrimination – which she cannot do – the claims still fail as Michigan Bell has legitimate, non-discriminatory reasons for her disciplines and subsequent termination.

Plaintiff's discipline and termination were the result of her work performance. As Michigan Bell has legitimate, nondiscriminatory reasons for Plaintiff's discipline and discharge, the burden shifts back to Plaintiff to demonstrate these reasons were pretextual. Pretext can be shown by offering evidence that "(1) the employer's stated reason had no basis in fact, (2) the stated reason did not actually motivate the employer, or (3) the stated reason was insufficient to warrant the adverse employment action." *Loyd v. Oakland*, 766 F.3d 580, 590 (6th Cir. 2014). In determining whether an employer "reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Smith*, 155 F.3d at 807-808.

Plaintiff has not offered any evidence that Michigan Bell's decision to discipline or terminate her employment was grounded in her race, national origin, sex, age or discipline. Or evidence that the stated reason did not actually motivate

19

the decision. She concedes that the Company's records reflecting her sustained subpar performance (the Scorecards) are accurate; that she received progressive discipline for her performance deficiencies; and that she was warned if her performance did not improve, she would be terminated. See Ex. A, Pltf's Dep. Tr. at 79:19-80:12, 93:5-94:6; see also Ex. J. For this additional reason, the Court should grant summary judgment dismiss with prejudice Plaintiff's discrimination claims. See *Johnson v. Fifth Third Bank*, 685 Fed. Appx. 379, 386 (6th Cir. 2017) (affirming dismissal of the plaintiff's discrimination claim because the plaintiff "provided no evidence of pretext that could create a genuine issue of fact as to [the employer's] legitimate grounds for her termination"); *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 709 (6th Cir. 2006) (same).

### C. Plaintiff Fails to Establish the Elements for Her Retaliation Claims.

Plaintiff alleges retaliation in violation of Title VII, the ADA, ELCRA, and the PWDCRA. See ECF No. 13, PageID.136-160, Counts 5, 7, 13, and 14. A prima facie case of retaliation requires a plaintiff to demonstrate that: (1) she engaged in protected activity; (2) the defendant knew of her exercise of her protected rights; (3) the defendant subsequently took an adverse employment action against the plaintiff or subjected the plaintiff to severe or pervasive retaliatory harassment; and (4) there was a causal connection between the plaintiff's protected activity and the adverse employment action. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 516

(6th Cir. 2009).[4] Plaintiff's retaliation claims fail because she is unable to establish her prima facie or pretext burdens of proof.

> ### 1. Plaintiff did not engage in conduct protected by Title VII, the ADA, the PWDCRA, or ELCRA.

Fatal to Plaintiff's retaliation claims is the fact that she engaged in no protected activity. "[A] vague charge of discrimination" does not constitute protected activity under Title VII. *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989). To be deemed protected activity, an employee needs to go beyond general claims of unequal treatment and specifically complain about an activity that constitutes a violation of the applicable act. *LaDuke v. Shinseki*, No. 12-11193 at *12 (E.D. Mich. Jan. 31, 2014) (explaining a "complaint about an employment practice constituted protected opposition only if the individual explicitly or implicitly communicates a belief that the practice constitutes unlawful employment discrimination," quoting EEOC Compliance Manual § 4.10).

Plaintiff claims Angela Jackson retaliated against her issuing discipline and terminating her employment because Plaintiff reported her to the Company for

---

[4] A retaliation claim under the ADA uses the same framework as a retaliation claim under Title VII. See *Penny v. United Parcel Serv.*, 128 F.3d 408, 417 (6th Cir. 1997). ELCRA retaliation claims also follow a Title VII analysis. See *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 775 (6th Cir. 2018). And retaliation claims under the PWDCRA follow this same framework. See *Marotta v. Ford Motor Co.*, 119 F.Supp.3d 676, 697 (E.D. Mich. 2015) citing *Donald v. Sybra*, 667 F.3d 757, 764 (6th Cir. 2012).

"bullying," namely coaching her for allowing "dead air" during a call, This Complaint is not protected activity under any of the relevant statutes because Plaintiff did not take an overt stand against suspected illegal discriminatory action. There is no evidence her complaint even mentioned discrimination or suggested the need for an investigation into discriminatory practices. *Brown v. VHS of Michigan*, 545 Fed. Appx. 368, 374 (6th Cir. 2013) (finding that an employee's complaint that did not include information sufficient to allege race, sex, or age discrimination was not protected activity because it did not put the employer on notice that the employee was opposing a practice unlawful under Title VII). Therefore, summary judgment is appropriate and Plaintiff's retaliation claims should be dismissed accordingly; *Lockett v. Marsh USA, Inc.,* 354 Fed. Appx. 984, 997 (6th Cir. 2009) (same).

### 2. Plaintiff has no evidence that Angela Jackson knew about her complaint.

Even assuming for argument's sake that Plaintiff could prove that her complaint was protected activity, her retaliation claims nevertheless fail because she has no evidence that Jackson knows about Plaintiff's supposed complaint. See Ex. A, Pltf's Dep. Tr. at 145:8-17. An employer cannot retaliate against a complaint about which they do not know. See *Evans v. Prof'l Transp., Inc.*, 614 Fed. Appx. 297, 301-02 (6th Cir. 2015) (affirming summary judgment of the plaintiff's retaliation claim and holding a plaintiff must make a specific showing that the particular individual responsive for the adverse employment decision knew about

the protected activity). For this additional reason, Plaintiff's retaliation claims fail.

### 3.   There was no casual connection between Plaintiff's supposed Complaint and Plaintiff's discipline and termination.

The Sixth Circuit applies the "but-for" standard for causation, meaning that a plaintiff is required to show that the adverse employment action would not have occurred *but for* the employee engaging in the protected activity. See *EEOC v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015); *Lewis v. Humboldt Acquis. Corp.*, 681 F.3d 312 (6th Cir. 2012). Without evidence that Ms. Jackson knew about Plaintiff's alleged complaint, Plaintiff cannot establish this element of her retaliation claims either. "An employment decision cannot be caused by protected activity if the decision-maker did not know about the protected activity." *Crane v. Mary Free Bed Rehab. Hosp.*, 634 Fed. Appx. 518, 526 (6th Cir. 2015).

### 4.   There is no evidence that Plaintiff's discipline or termination was pretextual.

For the reasons stated in Section IV.B.3, Plaintiff has not met her burden of establishing that Michigan Bell's legitimate reasons for disciplining and terminating her were pretext for discrimination.

## V.   CONCLUSION

For the reasons set forth above, Defendants request that this Court enter an order granting summary judgment, dismissing each claim with prejudice.

Dated:  June 2, 2023                    /s/ Jessica Kingston
_____

                                        Jessica Kingston  (P74417)
                                        LITTLER MENDELSON, P.C.
                                        200 Renaissance Center, Suite 3110
                                        Detroit, Michigan 48243
                                        (313) 202-3170
                                        jgkingston@littler.com

                                        *Attorneys for Defendants Michigan*
                                        *Bell Telephone Company and*
                                        *AT&T Services, Inc.*


## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served upon all parties and/or attorneys of record to the above cause herein at their respective addresses as disclosed on the pleadings on June 2, 2023 via:

| _____ | U. S. Mail | _____ | Facsimile |
|---|---|---|---|
| __X__ | ECF Filing | _____ | Hand Delivery |
| _____ | E-Mail | _____ | Federal Express |

                         /s/ Jessica Kingston
                         _____
                         Jessica Kingston

24