## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MONICA MENDEZ,
an individual,

        Plaintiff,

v.

MICHIGAN BELL TELEPHONE
COMPANY and AT&T SERVICES,
INC.,

        Defendants.

_____

Case No. 22-CV-11010

Hon. Stephen J. Murphy, III

Mag. Anthony P. Patti

## **PLAINTIFF'S BRIEF IN SUPPORT OF ITS RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**TABLE OF AUTHORITIES** .................................................................. iv

**STATEMENT OF ISSUES PRESENTED** ....................................... vii

**INTRODUCTION** ................................................................................. 1

**STATEMENT OF FACTS IN DISPUTE** ........................................... 2

**I.      THERE ARE GENUINE ISSUES OF MATERIAL FACT FOR TRIAL ON PLAINTIFF'S DISCRIMINATION CLAIMS.** ........................... 13

   **A.   PLAINTIFF HAS EVIDENCE THAT SHE WAS TREATED LESS FAVORABLY THAN INDIVIDUALS OUTSIDE HER PROTECTED CLASS.** ............................................................. 13

   **B.   PLAINTIFF HAS EVIDENCE THAT MANAGEMENT HAD KNOWLEDGE OF HER DISABILITY AND AGE.** ............................ 14

**II.     THERE ARE GENUINE ISSUES OF MATERIAL FACT FOR TRIAL ON PLAINTIFF'S RETALIATION CLAIMS.** ................................... 16

   **A.   PLAINTIFF HAS EVIDENCE OF PROTECTED ACTIVITY.** ......... 16

   **B.   PLAINTIFF HAS EVIDENCE OF KNOWLEDGE.** ........................... 17

   **C.   PLAINTIFF HAS EVIDENCE OF CAUSAL CONNECTION.** .......... 18

**III.    VIEWING ALL FACTS IN A LIGHT MOST FAVORABLE TO PLAINTIFF AND DRAWING ALL REASONABLE INFERENCES THEREFROM, DEFENDANTS' MOTION MUST BE DENIED BECAUSE THERE ARE GENUINE ISSUES OF MATERIAL FACT FOR TRIAL ON PRETEXT OF DEFENDANTS' PROFFERED REASON FOR DISCHARGE.** ................................................................................. 19

   **A.   PLAINTIFF HAS PRESENTED EVIDENCE OF DEFENDANTS' PROFFERED REASON FOR DISCHARGE WAS NOT THE BASIS IN FACT.** ...................................................................... 19

   **B.   PLAINTIFF CAN SHOW THAT DEFENDANTS' PROFFERED REASON WAS NOT SUFFICIENT TO MOTIVATE THE DISCHARGE.** ...................................................................... 20

**CONCLUSION**.................................................................................................21

**LOCAL RULE CERTIFICATION** ...................................................................23

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)............................... 17, 18, 26

*Blizzard v. Marion Tech Coll*, 698 F.3d 275, 283 (6th Cir. 2012), *cert denied*, 569

　　U.S. 975 (2013); *Lindsay v. Yates*, 578 F.3d 407, 418 (6th Cir. 2009); *Ladd v.*

　　*Grand Trunk WRR*, 552 F.3d 495, 502(6th Cir. 2009); *Nguyen v. City of*

　　*Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).......................................................20

*Chiles v. Machine Shop, Inc.*, 238 Mich. App. 462, 473 (1999) .............................18

*Crawford v. Metropolitan Gov't of Nashville & Davidson Cty*, 555 U.S. 271, 276

　　(2009)..................................................................................................................23

*EEOC v. New Breed Logistics*, 783 F.3d 1057, 1067 (6th Cir. 2015)....................23

*Hazle v. Ford Motor Co.*, 464 Mich. 456, 466 (2001) ...........................................18

*Johnson v. Kroger Co*, 319 F.3d 858, 866 (6th Cir. 2003)......................................26

*Kenkel v. Stanley Works*, 256 Mich App 548, 558-559; 665 NW2d 490 (2003) ....20

*Manzer v. Diamond Sharmrock Chems Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)..27

*Matusushita Electric Industrial Co. Ltd. v. Zenith Radio Corporation*, 475 U.S.

　　574 (1986),.........................................................................................................18

*Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516 (6th Cir. 2008) .........................19

*Montell v. Diversified Clinical Servs*, 757 F.3d 497, 505-508 (6th Cir. 2014);

　　*Lindsay v. Yates*, 578 F.3d 407, 418-419 (6th Cir. 2009); *Mickey v. Zeidler Tool*

*& Die Co*., 516 F.3d 516 (6th Cir. 2008); *Asmo v. Keane, Inc*. 471 F.3d 588, 594

 (6th Cir. 2006) ...................................................................................................25

*Ondricko v. MGM Grand Detroit, LLC*, 689 F. 3d 642 (6th Cir. 2012)..................19

*See Gelotex*, 477 U.S. at 331...................................................................................19

*Talley v. Bravo Pitino Rest*, 61 F.3d 1241, 1246 (6th Cir. 1995); *Hegwood v.*

 *Pharmacia/Upjohn*, 985 F. Supp. 728 (W.D. Mich. 1997); *Lytle v. Malady*, 458

 Mich. 153 (1998), *Matras v. Amoco Oil Co*., 424 Mich. 675 (1986) ..................19

*Toussaint v Blue Cross & Blue Shield of Mich*, 408 Mich 579, 613; 292 NW2d 880

 (1980)....................................................................................................................20

*United States v. Diebold, Inc*., 369 U.S. 654 (1962) ...............................................18

**Statutes**

THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C. §§ 621–634

 (ADEA)....................................................................................................................8

THE AMERICANS WITH DISABILITIES ACT 42 U.S.C. § 12101 (ADA), THE

 ELLIOT-LARSEN CIVIL RIGHTS ACT OF 1976, MCL 37.2101 et. seq.

 (ELCRA)..................................................................................................................8

THE CIVIL RIGHTS ACT OF 1964,42 U.S.C. §§ 2000e, et. seq., (Title VII)..... vii

THE MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT, MCL

 37.1101 ET SEQ (PDCRA)....................................................................................8

**Other Authorities**

*Summary Judgment Under Federal Rules*, 99 F.R.D. 465 (N.D.Cal. 2008)...........19

**Rules**

Fed. R. Civ. P. 56 ......................................................................................................17

## **STATEMENT OF ISSUES PRESENTED**

1.     Whether Mendez can present evidence that a reasonable jury could draw the inference set forth by Mirza that her race, age, disability, sex and national origin motivated her employment termination and she would not have been terminated but for her protected categories.

Mendez answers: Yes

2.     Whether Mendez can present evidence that a reasonable jury could draw the inference set forth by Mendez that there is a causal connection between her employment termination and her complaints of harassment, retaliation and discrimination on the basis of race, age, disability, sex and national origin.

Mendez answers: Yes

3.     Whether Mendez can present evidence that a reasonable jury could draw the inference set forth by Mendez that Defendants' proffered reason for terminating her employment is not legitimate and the proffered reason is a pretext for discrimination and retaliation.

Mendez Answers: Yes

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)

*Matusushita Electric Industrial Co. Ltd. v. Zenith Radio Corporation*, 475 U.S. 574 (1986)

*Celotex Corporation v. Catrett*, 477 U. S. 317 (1986)

*United States v. Diebold, Inc*., 369 U.S. 654 (1962)

## **INTRODUCTION**

This is an employment discrimination and retaliation cases involving race, age, disability, sex and national origin in violation of THE CIVIL RIGHTS ACT OF 1964,42 U.S.C. §§ 2000e, et. seq., (Title VII), THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C. §§ 621–634 (ADEA), THE AMERICANS WITH DISABILITIES ACT 42 U.S.C. § 12101 (ADA), THE ELLIOT-LARSEN CIVIL RIGHTS ACT OF 1976, MCL 37.2101 et. seq. (ELCRA), and THE MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT, MCL 37.1101 ET SEQ (PDCRA). Mendez was terminated after 27 years of service. She was two years away from pension eligibility. When Mendez transferred to the sale department, she received no training on offering sales to customers who call with other issues and are often upset. She was the only Mexican female with a known disability in the sales department with the highest seniority for her age as she is currently 48 years of age. Management played loud music towards her as she tried to speak with customers and they did other things to distract Mendez while she did her job, which included speaking with customers on the phone. Defendants' issued a barrage of disciplines against Mendez for not offering sales on every call; however, none of the other 39 employees were being written up like Mendez and coworkers who did not offer sales on every call were not written up like Mendez and terminated. Mendez made complaints with Defendants' ethics hotline about

1

harassment and the mistreatment. It got so bad that Mendez was forced to take a disability leave of absence due to anxiety and depression. When she returned from her leave, she was immediately written up several more times until finally she was terminated. Just days before being terminated, Mendez attended a meeting with management where she specially complained about discrimination on the basis of her race, age, disability, sex, and national origin and retaliation.

Mendez has set forth evidence and testimony that a reasonable jury can return a verdict in her favor. Therefore, there are genuine issues of material fact on her claims and Defendants' motion must be denied.

## STATEMENT OF FACTS IN DISPUTE

### 1. Mendez Works 27 Years at "AT&T" with no Problems

Mendez is a 48 year old Mexican American female who suffers from depression and anxiety. M 140, 146,  Ex 7. Mendez began her employment with Defendants on or about October 5, 1992 as a Relay Operator for the hard of hearing and deaf impaired. M 19.  From October 5, 1992 through about January 2018, Mendez had never been written up, disciplined, or received poor performance reviews from Defendants. Ex. 27. Plaintiff's check stubs said "AT&T," and the other correspondence such as letters stated AT&T and not Michigan Bell. Exs. 2, 3, 4, 6, 10-22.

### 2. Mendez transfers to sales department and receives little training

Since the company was closing locations, Mendez began training for a transfer to the sales department with about 40 coworkers, with an interest to learn about Defendants' products and ways they could grow with the company. M. 103, 194. She was the only Mexican American with a known disability in the sales department. M. 120, 142. Mendez testified that she received very little training. M. 30.  Mendez told whoever would listen that she needed more training and she did not receive it. M. 32.Mendez had questions everyday about the job. M. 31. Mendez did not get any help. M. 31. She asked for training such as sitting with other coworkers to see how they handle calls and sell products on calls and she was not permitted to do so. M. 32-33. Mendez was written up during training. M. 121, Ex. 22. Mendez was not given a chance to learn sales because of the environment around her. She could not focus. M. 77. She could help customers with what she knew. M. 77. Exs 24-26.

Mendez testified that everyone in the office knew her age because it was known that she has a higher seniority despite her age. M. 135. Mendez told her teammates how older she was because they would ask. M. 135-136. Her age was a topic because she had been at the company for 28 years. M. 136.

### 3.  Mendez's managers start treating her differently than her coworkers

Mendez was skipped over in the chat room when she asked questions and her questions were ignored by management. M. 27, 31. Ex. 29. When she did not

get assistance in the chatroom she would walk around looking for managers for assistance and still did not receive it. M. 28-29. Mendez complained to her Manager Bahena daily about being ignored in the chatroom. M. 30-31. Mendez complained to management about the loud music playing in close proximity of her work station, which she was closer than her coworkers, and management would clap and yell when she was on calls. M. 26, 31-32.  Ex. 27. Defendant played music throughout the day. *Id*. Although the representatives worked in an open space, Mendez was located right next to the speakers. M. 186. She complained to Behena about the loud music. M. 32.

### 4.  Mendez starts receiving disciplines

On or about April 27, 2018, Mendez received her first write-up while still in training for her transfer to the sales department. Ex. 22. After transferring to the sales department, Mendez received a at least five write-ups in less than one year. Ex. 9.  Defendants wrote Mendez up for not offering sales on her calls. *Id*. Mendez testified that Mike Walker told Mendez that he did not offer on every call and he was not being written up or disciplined like Mendez. M. 100, 190. Mendez learned that her coworker (not Mexican), like Walker, was getting "green calls" with high sales probability while Mendez was getting the same trouble customers who were upset because they had issues with their bills, etc. M. 100.

On or about June 21, 2018, Mendez received her first suspension. Ex. 20. Mendez subsequently filed several grievances due to Defendants' constant, unfounded discipline actions against Mendez, and management received written notice of those grievances. Exs. 11-13. Mendez testified that no one in the sales department was written up constantly the way she was written up. M. 114, 115, 120, 12, 122.

### 5. Mendez complains about harassment, discrimination and retaliation

Mendez complained to the ethics hotline, in 2018 and 2020. M.24-25, 33-34. In 2018, Mendez complained that her Manager Carlos Behena and Center Manager Kenny Spears was bullying her. M. 25. Mendez complained that they refused to assist her; they were playing music loud near her; they were conducting meetings around her workstation and she could not hear her customers; and they were loud, yelling and clapping around Mendez and she could not hear her customers. M. 26-27.

In 2020, Mendez complained to the ethics hotline that her Manager Angela Jackson was harassing and bullying Mendez. M. 34. Mendez was trying to assist her customer and Jackson interrupted and yelled at Mendez about "dead air" during the call even though Mendez indicated there was no "dead air." M. 35-36. Angela Jackson spoke with Mendez about having dead air on the calls. M. 35. She continued coming over disrupting Mendez about dead air as Mendez was trying to

work and yelled at Mendez causing a traumatic experience. M. 36. However, the general policy for dead calls is two minutes and a beep sounds when you hit that two minute mark and the beep did not sound while Mendez was on the call. M. 40. Jackson allowed Mendez's coworkers to talk at meetings but would shut Mendez up and cut her off when she tried to speak. M. 128. Mendez told Jackson that she could not harass her. M. 36. Mendez told Jackson that she was going to complain to the union. M. 37.She also complained on the hotline that Project Manager Janice Breedlove discriminated against her. M. 132.

### 6. Mendez goes on disability leave due to anxiety and depression

In April 2019 Mendez went on a short term disability leave of absence, through on or about June 6, 2019, due to the mistreatment. Exs 6, 7, 8, 9, 27. Mendez requested accommodations for her anxiety and depression, which was requesting days off work. M. 143, Ex. 7. Mendez submitted the request every time she went out on disability leave, and she was off work on a disability leave of absence from April 2019 through June 2019.  Ex. 6, 7, 8 and 9.

### 7. Mendez submits a request for accommodation

Mendez's request for accommodation indicates the time that she would be off work because she "was unable to perform the essential functions of her job." Ex. 7 The questionnaire prepared by Mendez's physician states that Mendez has a "Mental Impairment" and identifies the "Functional Limitations" with respect to

work. Ex. 7. In her request for accommodation, Mendez's physicians "patient continues to have symptoms of depression, anxiety, including difficulty focusing, and unable to perform job tasks". Ex. 7. This is a "daily limitation", and "due to "ongoing symptoms, patient cannot perform essential job duties." Ex.  7.

Sedgwick, Defendants' disability insurance company, emailed Mendez's supervisor Carlos Behena informing of the days Mendez would be out on disability. Ex. Records from Sedgwick state the same. Ex. 6, 8.

### 8.  Sedgwick notifies management of Mendez's disability leave of absence

The short term disability company informed Mendez's "supervisor" Carlos Bahena that Mendez had a pending disability claim via email. Ex. 6, 8.

### 9.  Mendez is disciplined as soon as she returns from disability leave

Upon returning from the disability leave, Mendez was suspended on August 5, 2020. Ex. 16.  In or around October 2020, Mendez added to her previous complaint from December 2018 in her new hotline complaint. Mendez was again suspended on October 6, 2020, and October 22, 2020. Ex. 15. On or about March 16, 2021, Defendants placed Mendez on a final suspension. Ex. 12.

### 10. Mendez's grievances and complaints of discrimination, harassment and retaliation continue

Mendez conducted a grievance meeting on February 2, 2021, April 7, 2021, August 25, 2020, April 29, 2019 with management and union representatives. Exs., 11-13. The grievances states unfair disciplines regarding performance and it

indicates that Mendez's manager Angela Jackson received written notification of the grievance on January 5, 2021, her manager Chad Perras received notification of the grievance on March 16, 2021. Exs. 11-13. Carlos Behena received notification of the grievance on April 29, 2019. Exs. 11-13.

Mendez's grievance letter states "Suspended Pending Termination of employment with AT&T effective 3/16/2021."Ex. 14 Defendants' own documents state that Mendez was an employee of AT&T. Ex. 14. Mendez complained to Angela Jackson in or about February 9, 2021, that she was not getting the kinds of calls that would sell. Ex. 23.

When Mendez received side-by-side training, she did a good job. Ex. 24-26. Manager Lavicenae Reid reassured Mendez that she was doing a "great" job attempting to convert a caller into a potential customer. Ex. 24-26. Mendez requested systems access and some additional resources from Manager Lavincenae and Mendez testified she did not receive the support and assistance she requested. Ex. 24

Management, including Janice Stone-Breedlove, who Mendez identified as someone who had discriminated against her and who she complained about, attended the April 7, 2021 grievance Review Board Meeting. Ex. 27. This meeting took place before the termination as Mendez was terminated on April 11, 2021. M. During that meeting, Mendez complained that her discipline suspension pending

8

termination was "punishment"; her experience in the sales department has been "horrible" since 2018 due to "toxic environment" and that it caused Mendez's "mental / physical health [sic] suffer"; she reported the toxic work environment to "management and "HR"; and Mendez complained about "harassment", "bullying" "discrimination" based on "race" and "disability" and that "males" are hard to work with. Mendez complained that she "knows she has been targeted" and her work environment has been "made difficult so that she would mess up and be terminated." Ex. 27.

Mendez further complained in 2018 she had been written up 7 times and suspended 4 in less than 1 year while in her 27 years she had never been in trouble. Ex. 27. Mendez complained that she did not receive proper training and her manager Angela Jackson would "shush", was "rude." Ex. 27. Mendez complained about the "loud music" and "yelling" and that she could not "hear" or "concentrate" and that she "always asked to lower the music" and always received a "hard time about it." Ex. 27.

Mendez complained that since 2018, she could not learn because of her disability, and that she was forced back to work on purpose and she referenced age, race and disability discrimination. Ex. 27. Mendez complained that management did not like for her to ask questions, and only Manager  Lavincenae tried to help although it was not much. Ex. 27.  Mendez complained that it was "suspicious not

everyone written up" and "certain people get calls with opportunity." Ex. 27. Mendez stated that the environment was discriminatory and retaliatory. Ex. 27. Mendez stated that manager Carlos did not provide helpful coaching, for example, telling her that she "has to offer is not telling [her] how to offer." Ex. 27. Mendez mentioned she was placed on a leave of absence and that she would feel "panic and dread" before meetings. 27. Mendez provided her typed out statement for management so that they could discuss before terminating her employment. Ex. 27, 32. Mendez complaints have been consistent at other grievance Review Board meetings. Ex. 27, 28.

### 11. Defendants terminate Mendez's employment two years before pension eligibility

On or about April 14, 2021 (or April 12, 2021) , Defendants terminated Mendez's employment. M. 22. On or about February 4, 2022, Mendez filed a Charge of Discrimination for discrimination and retaliation on the basis of disability, national origin, sex, and age. Ex. 30. The Equal Employment Opportunity Commission issued Notice of Right to Sue on February 12, 2022. Ex. 31. Mendez was terminated less than two years away from her pension eligibility. Ex. 10.

### <u>STANDARD OF REVIEW</u>

The Court must deny a motion for summary judgment under Fed. R. Civ. P. 56 if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). The movant has the burden of showing that there is no genuine issue of material fact. *Id*. at 243. If the movant meets its burden, the Court must still deny the motion if the nonmoving party produces evidence that supports a jury verdict. *Id*. The inquiry is whether the evidence presents such a disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Id*. at 242. The trial judge must not weigh the evidence and determine who is telling the truth when reviewing a summary judgment motion. *Id*. at 242. The trial court must only determine whether there is a genuine issue of material fact for trial. *Id*. at 242.

"On summary judgment the inferences to be drawn from the underlying facts… must be viewed in a light most favorable to the party opposing the motion." *Matusushita Electric Industrial Co. Ltd. v. Zenith Radio Corporation*, 475 U.S. 574 (1986), citing *United States v. Diebold, Inc*., 369 U.S. 654 (1962).

## <u>ARGUMENT</u>

Defendants argue that there is no evidence of retaliation or discrimination. The issue is whether Mendez can present evidence that a reasonable jury could draw the inference offered by Mendez that her age, race, nationality, and disability motivated her employment termination and she would not have been terminated but for those things. *Anderson*, 477 U.S. at 242; *See Hazle v. Ford Motor Co*., 464

11

Mich. 456, 466 (2001); *See also Chiles v. Machine Shop, Inc.*, 238 Mich. App. 462, 473 (1999)(holding that a party may establish disability by showing that he or she has been discriminated against in one of the ways set forth under PWDCRA). The evidence contradicts Defendants' proffered reasons for termination therefore there are genuine issues of material fact for the jury. *See Summary Judgment Under Federal Rules*, 99 F.R.D. 465 (N.D.Cal. 2008)("…when there is a conflict in the underlying evidence material to the determination of the ultimate fact, there is of course a triable issue for the jury). Ultimately, at trial, a motion for directed verdict will be denied and the jury could and would return a verdict in Mendez's favor. *See Celotex Corporation v. Catrett*, 477 U. S. 317, 331 (1986).

Here, circumstantial evidence proves Defendants' unlawful motive in terminating Mendez's employment. *See Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516 (6th Cir. 2008)(explaining that in the absence of direct evidence a plaintiff can prove discrimination with circumstantial evidence)[1]. Defendants' challenge the 1st and 4th elements of Mendez's *prima facie* case of discrimination.[2] Defendants' challenge the 1st, 2nd and 4th elements of Mendez's

---

[1] A plaintiff may prove retaliation through circumstantial evidence.

[2] The elements for a *prima facie* case of discrimination are: (1) membership in a protected group, (2) qualification for the position, (3) adverse employment action, and (4) replacement by a nongroup member, or showing that similarly situated persons that are not in the protected group were treated differently than the plaintiff. *Ondricko v. MGM Grand Detroit, LLC*, 689 F. 3d 642 (6th Cir. 2012); *Talley v. Bravo Pitino Rest*, 61 F.3d 1241, 1246 (6th Cir. 1995); *Hegwood v. Pharmacia/Upjohn*, 985 F. Supp. 728 (W.D. Mich. 1997); *Lytle v. Malady*, 458 Mich. 153 (1998), *Matras v. Amoco Oil Co*., 424 Mich. 675 (1986).

*prima facie* case of retaliation.[3] Defendants' motion fails because it has not met its burden of establishing no genuine issues of material fact regarding these elements or Mendez's claims.

## I.      THERE ARE GENUINE ISSUES OF MATERIAL FACT FOR TRIAL ON PLAINTIFF'S DISCRIMINATION CLAIMS.

### A. PLAINTIFF HAS EVIDENCE THAT SHE WAS TREATED LESS FAVORABLY THAN INDIVIDUALS OUTSIDE HER PROTECTED CLASS.

Exhibit 29 is evidence that Mendez was treated less favorably than her similarly situated coworkers. Defendant alleges performance issues related to sales and issued 7 disciplines, including employment termination. Exhibit 29 shows that Mendez was asking for guidance and her supervisor ignored Mendez's inquiries and did not provide assistance. The fact that Defendant issues 7 performance-based disciplines while at the same time ignoring her requests for assistance is evidence of Defendant's animus.

Mendez's testimony is evidence that she was treated less favorably than her similarly situated coworkers. A party's own testimony, standing alone, can be

---

[3] The elements for a *prima facie* case of retaliation are: (1) plaintiff engaged in a protected activity, (2) the plaintiff knew of the protected activity, (3) the defendant took a materially adverse employment action against the plaintiff, (4) a causal connection existed between the protected activity and adverse employment actions. *Blizzard v. Marion Tech Coll*, 698 F.3d 275, 283 (6th Cir. 2012), *cert denied*, 569 U.S. 975 (2013); *Lindsay v. Yates*, 578 F.3d 407, 418 (6th Cir. 2009); *Ladd v. Grand Trunk WRR*, 552 F.3d 495, 502(6th Cir. 2009); *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

sufficient to establish a genuine question of fact. *See Toussaint v Blue Cross & Blue Shield of Mich*, 408 Mich 579, 613; 292 NW2d 880 (1980); *Kenkel v Stanley Works*, 256 Mich App 548, 558-559 (2003). Mendez testified that her male coworker Walker was not making offers on every call and he was not written up like Mendez. Mendez testified that Linda was getting green calls while she was receiving all the bad calls, and that none of her coworkers were being written up like her, the only Mexican female in the sales department with the highest seniority and a known disability.

Exhibit 29 plus Mendez's testimony, viewed in a light most favorable to Mendez, creates the inference that Mendez was treated less favorably than her similarly situated coworkers on the basis of her race, age, disability, gender and national origin. Therefore, there is a genuine issue of material fact regarding the similarly situated element and discrimination on the basis of race, age, gender and national origin.

### B. PLAINTIFF HAS EVIDENCE THAT MANAGEMENT HAD KNOWLEDGE OF HER DISABILITY AND AGE.

Exhibits 6 through 9 show that Mendez's supervisor Bahena was aware that she was out on a disability leave. Exhibits 6 through 9 state the timeframe in which she would be out and Mendez's request for accommodation form (Ex. 7) states that Mendez suffered from anxiety and depression and had functional limitations as a result. Since Mendez's supervisor knew that she was out on a disability, it

14

necessarily follows that Mendez's supervisor knew that Mendez has a disability or at the very least that she had an alleged disability. Since Sedgwick informed Bahena that Mendez would be out on disability, there is a genuine issue of material fact whether Bahena knew about Mendez's anxiety and depression. Viewing all facts in a light most favorable to Mendez, the inference from Exs 6 through 9 is the Bahena and management knew about Mendez's disability and it was the basis for the employment termination.

Exhibit 27 shows that manager Breedlove and Perrass and management were aware of her age since Mendez stated at the April 7, 2021 grievance meeting that she had the most seniority with a seniority date of "10/8/92". Exhibit 27 plus Mendez's testimony that everyone in the office knew her age because it was known that she had the most seniority, viewed in a light most favorable to Mendez, creates the inference that Defendants' management knew Mendez's age and it was a basis for her employment termination.

The jury will return a verdict in Mendez's favor upon reviewing Exhibits 6 through 9, 27 and 29 plus Mendez's testimony, and therefore under Anderson, Defendants' motion must be denied.[4]

---

[4] Defendants must concede that Mendez meets the remaining elements of the prima *facie case* since she belongs in a protected category as a Mexican female over the age 40, with a disability, and she was qualified for the position as someone who worked for AT&T for 27 years with no problems. The same is true regarding the remaining elements of retaliation.

II.   **THERE ARE GENUINE ISSUES OF MATERIAL FACT FOR TRIAL ON PLAINTIFF'S RETALIATION CLAIMS.**

### A. PLAINTIFF HAS EVIDENCE OF PROTECTED ACTIVITY.

Mendez's complaints at the April 7, 2021 grievance meeting constitutes protected activity. *See Crawford v. Metropolitan Gov't of Nashville & Davidson Cty*, 555 U.S. 271, 276 (2009)(explaining that that the scope of what constitutes "opposition" is broad, and its definition "carries its ordinary meaning: '[t]o resist or antagonize … ; to content against; to confront; resist; withstand."). *See also EEOC v. New Breed Logistics*, 783 F.3d 1057, 1067 (6th Cir. 2015).  Exhibit 27 is evidence that Mendez complained about discrimination and retaliation on the basis of race, age, gender, national origin and disability. Viewing Exhibit 27 in a light most favorable to Mendez, the inference is that Breedlove and Perrass and Defendants' management received Mendez's complaints of discrimination and retaliation.

Mendez testified that she complained to Defendant's ethics hotline twice (in 2018 and 2020) about mistreatment by Bahena and Spears in 2018 and Breedlove, and Jackson in 2020. This is evidence of a protected activity. Viewing Mendez's testimony in a light most favorable to Mendez, the inference is that Mendez complained about discrimination and retaliation as part of her ethics complaints.

Exhibits 6 through 9 show that Mendez applied for short term disability benefits and requested reasonable accommodations due to depression and anxiety

caused by the work environment, which is a protected activity. Viewing exhibits 6 through 9 in a light most favorable to Mendez, the inference is that Mendez submitted her request to Defendants regarding her disability.

Mendez testified that she complained directly to her Angela Jackson telling Jackson that she "could not come over harass her, " and exhibit 11 states that Jackson was notified of Mendez's grievances against Defendant. Viewing Mendez's testimony and the grievances in a light most favorable to Mendez, the inference is that Mendez complained to Defendants that they could not harass her, and Mendez complained about unlawful discrimination on the basis of race, age, national origin, gender and disability.

## B. PLAINTIFF HAS EVIDENCE OF KNOWLEDGE.

Exhibits 6-10, 10-13, 27 and 28 are evidence that Defendants had knowledge of Mendez's protected activity. Exhibit 11 shows that Jackson was aware of Mendez's 1/25/21 grievance. Exhibit 27 shows that Breedlove and Perrass (Defendants' management) were present at the April 4, 2021 grievance meeting where Mendez complained about discrimination on the basis of race, age, disability and gender and retaliation. Mendez's testimony is evidence that Jackson was aware that Mendez complained that Jackson "could not come over and harass" her. Viewing Exhibits 6-9, 10-13, 27 and 28 and Mendez's testimony in a light most favorable to Mendez, the inference is that Defendants were are of Mendez's

protected activity. Therefore, there is a genuine issue of material fact that regarding knowledge and retaliation.

### C. PLAINTIFF HAS EVIDENCE OF CAUSAL CONNECTION.

Defendant's write ups increased after Mendez's complaints to the hotline. Mendez received at least six disciplines until they sent her out on disability leave for stress and anxiety. Exhibits 17 -22. When Mendez was out on leave she feared returning because she believed her employer was trying to terminate Mendez. Ex. 27. When Mendez returned from disability leave, she received write ups and was suspended pending termination. Exs. 12-16. Defendants' attended the grievance meeting on April 7, 2021 where Mendez complained about discrimination on the basis of race, age, disability, gender and retaliation, and Mendez was terminated by April 14, 2021. Ex. 27. When an adverse employment action is taken against the plaintiff in close proximity to the protected activity, the temporal timing alone is sufficient to establish the necessary causal link. *Montell v. Diversified Clinical Servs*, 757 F.3d 497, 505-508 (6th Cir. 2014); *Lindsay v. Yates*, 578 F.3d 407, 418-419 (6th Cir. 2009); *Mickey v. Zeidler Tool & Die Co*., 516 F.3d 516 (6th Cir. 2008); *Asmo v. Keane, Inc*. 471 F.3d 588, 594 (6th Cir. 2006). Viewing temporal timing of Mendez's employment termination with her complaints of discrimination and retaliation, the inference is that her complaints caused her employment

termination. Therefore, there is a genuine issue of material fact regarding "causation" and retaliation.

The jury will return a verdict in Mendez's favor upon reviewing exhibits 6-9, 10-13, 27 and 28, therefore under *Anderson* Defendants' motion must be denied.

**III. VIEWING ALL FACTS IN A LIGHT MOST FAVORABLE TO PLAINTIFF AND DRAWING ALL REASONABLE INFERENCES THEREFROM, DEFENDANTS' MOTION MUST BE DENIED BECAUSE THERE ARE GENUINE ISSUES OF MATERIAL FACT FOR TRIAL ON PRETEXT OF DEFENDANTS' PROFFERED REASON FOR DISCHARGE.**

**A. PLAINTIFF HAS PRESENTED EVIDENCE OF DEFENDANTS' PROFFERED REASON FOR DISCHARGE WAS NOT THE BASIS IN FACT.**

Mendez does not contest the factual basis of the write-ups as Mendez asked for assistance and did not receive it. Even if the write-ups could motivate her discharge, it is more likely that her age, race, disability, gender and nationality and complaints motivated her discharge. Exhibits 23-26 plus Mendez's testimony tend to prove that an illegal motivation was more likely than the write-ups offered by Defendant since Mendez: (1) did not receive the necessary training to sell (no one trained her on how to sell); (2) when Mendez received side-by-side training, she did "great", and (3) Mendez was not receiving good sells calls. *See Johnson v. Kroger Co*, 319 F.3d 858, 866 (6th Cir. 2003). Viewing Exhibits 23-26 and Mendez's testimony in a light most favorable to Mendez, the inference is that any

19

performance issues were intentionally caused by Defendants' as a way to continue writing Mendez up until she would be terminated, and the real reason for the employment termination was discrimination and retaliation on the basis of race, age, disability, gender, nationality.

### B. PLAINTIFF CAN SHOW THAT DEFENDANTS' PROFFERED REASON WAS NOT SUFFICIENT TO MOTIVATE THE DISCHARGE.

Defendants' disciplines leading to her termination were based on the fact that she was not offering sales products on her calls. However, Mendez testified that Walker informed her that he was not offering on his sales calls and he was not being written up like Mendez. Viewing Mendez's testimony and Exs 23-27 in a light most favorable to Mendez, the inference is that Defendants' proffered reason for terminating Mendez's employment just two years before retirement is suspicious and combined that combination of suspicion with the elements of the *prima facie* cases above are sufficient to warrant a verdict in Mendez's favor. *See Manzer v. Diamond Sharmrock Chems Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)(explaining "suspicion of mendacity" provides a basis for rebutting a proferred legitimated non-discriminatory reason); *see also St. Mary's Honor Ctr v. Hicks*, 509 U.S. 502 (1993)(explaining that the suspicion, combined with the elements of the prima facie case is sufficient to justify a verdict in the plaintiff's favor). Therefore, there are genuine issues of material fact regarding pretext and

discrimination and retaliation. Since the jury will return a verdict in Mendez's favor upon reviewing this evidence plus Mendez's testimony, Defendants' motion must be denied.

## IV. THERE IS EVIDENCE THAT PLAINTIFF WAS AN EMPLOYEE OF AT&T SERVICES, INC.

.

Defendants' argument that Mendez is an employee only of Michigan Bell and not AT&T is rebutted by the record evidence. The front and back of Mendez's check stubs have the AT& T logo. Ex. 2. Mendez's discipline letters and grievances have the AT&T logo. Exs. 10-22. Mendez's work badge has the AT&T logo along with "employee" written next to "AT&T". Ex. 5. Documents produced by AT&T states "AT&T Services, Inc." and "Michigan Bell Telephone Company." Ex. 6. Mendez completed a request for ADA "job accommodation" form that references AT&T (not Michigan Bell). Ex. 7. Since these documents indicate that Mendez is an employee of AT&T, AT&T is her employer for purposes of this lawsuit and Defendants' motion must be denied.

## CONCLUSION

Based on the foregoing, Mendez requests that this honorable court deny Defendants' motion in its entirety and grant such other relief appropriate under the circumstances.

Respectfully Submitted,

COTTON LAW CENTER, PLLC

By:   /s/ Daimeon M. Cotton
           Daimeon M. Cotton (P75563)
           *Attorney for Plaintiff*
           Cotton Law Center, PLLC
           13900 Woodward Avenue
           Highland Park, Michigan 48203
Dated: July 7, 2023      Ph: (313) 998-2017

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2023, I caused the foregoing and this Certificate of Service to be filed with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

/S/Daimeon M. Cotton

## <u>LOCAL RULE CERTIFICATION</u>

I, Daimeon M. Cotton, certify that this document complies with E.D. Mich. L. R. 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length pursuant to E.D. Mich. L. R. 7.1(d)(3).

/S/Daimeon M. Cotton